IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER THIRTEEN |
| | : | |
| GEORGE DANIEL GARNIER | : | BANKRUPTCY NO.: 5-11-bk-01487-JJT |
| JOLLETTE RAE GARNIER, | : | |
| DEBTORS | : | |
| | : | |
| GEORGE DANIEL GARNIER | : | {**Nature of Proceeding**: Defendant's |
| JOLLETTE RAE GARNIER, | : | Motion for Summary Judgment (Doc. #131) |
| PLAINTIFFS | : | and Plaintiffs' Cross Motion for Partial |
| | : | Summary Judgment (Doc. #134)} |
| vs. | : | |
| | : | |
| CITIMORTGAGE, INC., | : | |
| DEFENDANT | : | **ADVERSARY NO.: 5-13-ap-00206-JJT** |

# OPINION

The Debtors, George and Jollette Garnier, have filed an adversary action against Citimortgage, Inc., alleging various causes of action implicating a mortgage and note executed by the male Debtor, George Garnier, originally in favor of United National Mortgage Corp. d/b/a Citizen First Mortgage. The adversary began in 2013 and has suffered through a number of preliminary discovery issues as well as sanction motions. As a result of an Order dated July 9, 2015, two of the five Counts have been dismissed. (Doc. #62.) Those remaining Counts seek, as follows:

Count I
 . . . enter an order declaring the transfer of any ownership interest from United National Mortgage Corporation to Mortgage Electronic Registration Systems, Inc. invalid, and void; and further declaring the assignments from Mortgage Electronic Registration Systems, Inc. to CitiMortgage, Inc. invalid and void; and further, declaring the assignment of October 28, 2013 from Flagstar FSB to Citimortgage Inc. is invalid and void, as well as ordering the return of all sums paid by the debtor or on behalf of the debtor to Citimortgage, Inc., together with attorneys fees and costs of suit,

Count IV
> . . . enter an order, reclassifying the claim of Citimortgage Inc. from and [sic] allowed secured claim to allowed unsecured nonpriority claim, together with attorney's fees and costs of suit.

Count V
> . . . enter an order reducing the secured portion of proof of claim number five to the fair market value of the debtors residence with the remaining balance as an unsecured no priority claim, lowering the interest rate of the debtors mortgage to a fair market rate of interest, reducing the debtors mortgage payment, and modifying the term of the debtors mortgage, together with attorneys fees and costs of suit.

Amended Complaint (Doc. #28).

In an effort to expedite the further disposition of this case, the parties have filed cross Motions for Summary Judgment and have submitted a list of material facts not in dispute. It should be preliminarily observed the source of much of this convolution has been the fact that the Debtors' current Chapter 13 was immediately preceded by an earlier Chapter 7 filing by Debtors, George and Jollette Garnier, which resulted in a discharge of personal obligations including Mr. Garnier's obligation under the note secured by the mortgage in question.

Rather than identify all the facts alleged to be undisputed, I believe it would be more productive to set forth a timeline of events which do not appear to be challenged.

2002, November 26 - Original loan from United National Mortgage Corp. d/b/a Citizen First Mortgage.

2002, November 26 United assigns mortgage to Flagstar Bank FSB. Proof of Claim #5-3.

2002, December 3 - Flagstar assignment recorded. Proof of Claim #5-3.

2006, October 1 - Flagstar transfers servicing rights to Citimortgage.

2006, October 9 - United assignment of mortage to Mortgage Electronic Registration Systems, Inc. (MERS) effective 10/1/006. Proof of Claim #5-2.

2006, December 19 - Citimortgage takes either custody or possession of note.

2009, June 10 - Garniers file Chapter 13 to 5:09-bk-04467-JJT.

2011, February 4 - Garniers receive discharge after converting to Chapter 7.

2011, March 2 - Garniers file current Chapter 13 to the current case number.

2011, July 10 - Proof of Claim deadline. Doc. #10 of main case 5:11-bk-01487-JJT.

2011, July 21 - MERS assigns mortgagee to Citimortgage. Proof of Claim #5-2.

2011, August 6 - Debtor files proof of claim on behalf of Citimortgage for $88,954.40.

2011, November 18 - Citimortgage filed first amended proof of claim.

2013, August 19 - Mr. Garnier initiates adversary proceeding.

2013, August 31 - Note sent to Citimortgage counsel.

2013, October 28 - Flagstar assigns mortgage to Citimortgage, Inc. Proof of Claim #5-3.

2013 November 6 - Citimortgage assignment recorded. Proof of Claim #5-3.

2014, September - Garnier makes last payment to Citimortgage.

2015, May 5 - Citimortgage files second amended proof of claim.


It is rather typical that when individuals finance real estate, they execute both a mortgage and a note. The mortgage represents security for the note. The note sets forth the terms of repayment and, also, burdens the obligor to personally repay the note. 2 Ladner Pennsylvania Real Estate Law, § 25.05(b) (6th ed. 2015). While the mortgagee and the obligee are generally the same entity, it is not unusual for these entities to be different as the note is passed along from party to party. This would not be the case should the note be specially endorsed or payable only

to a specific entity. *Gerber v. Piergrossi*, 142 A.3d 854, 858 (Pa. Super. 2016). Typically, payments would be payable to the holder in due course, which holder possesses the remedy of executing upon the note. *Harper v. Lukens*, 271 Pa. 144, 112 A. 636, 637 (1921). A personal bankruptcy, however, will normally discharge that personal obligation and leave the mortgagee with foreclosure as its only remedy for nonpayment of the obligation. *Johnson v. Home State Bank*, 501 U.S. 78, 111 S. Ct. 2150, 115 L. Ed. 2d 66 (1991). The obligation would still be payable to the holder of the note and mortgage, but collection by foreclosure would be the only remedy for nonpayment. That remedy would only be available to the holder of both the mortgage and the note because the mortgage is simply the security to insure repayment of the note. *CitiMortgage, Inc. v. Barbezat*, 131 A.3d 65, 68 (Pa. Super. 2016).

A servicer has standing to file a claim for a creditor. *Greer v. O'Dell*, 305 F.3d 1297, 1302 (11th Cir. 2002). What becomes apparent is that Citimortgage apparently filed a proof of claim on November 18, 2011, not as servicer, but as the current holder of the mortgage. This was at a time when the mortgage was owned by Flagstar. It was not until October 28, 2013, when Citimortgage held both the mortgage and presumably the note when it had an entitlement to foreclose. The proof of claim of May 5, 2015, appears valid but untimely. A mortgagee has no obligation to file a proof of claim, though. The Advisory Committee Note to Rule 3002(a) states that, "[a] secured [proof of] claim need not be filed or allowed under § 502 or § 506(d) unless a party in interest has requested a determination and allowance or disallowance under § 502."

With regard to Count I, it is apparent that United's assignment of its mortgage to MERS postdated United's assignment to Flagstar rendering ineffective the assignment to MERS. The

agreed facts appear to suggest that Flagstar was the owner of the mortgage and had the right to assign the mortgage to the assignee of its choice which, in this case, was Citimortgage. In Count I, the Debtors ask that funds paid to Citimortgage be returned, but the undisputed facts seem to indicate that, at least as of October 1, 2006, Citimortgage was the servicer for Flagstar and may have had a legitimate right to accept funds on behalf of Flagstar. Only a review of the servicing agreement would determine that.

Turning my attention to Count IV, I see nothing on the undisputed facts that would reduce Citimortgage's secured interest to unsecured status, although it appears that Citimortgage's position as a secured creditor arose no earlier than October 28, 2013, well after the filing of this bankruptcy in 2011. What may well be an issue is whether Citimortgage's "possession" of the note from 2006 was as a simple custodian of another or as the payee on the note. While this is curious, it appears of no moment once Citimortgage acquired the mortgage in 2013. Count IV asks me to disallow the claim. Technically, Citimortgage appears to be a mere servicer until 2013 and could not have been a secured creditor at the time of the bankruptcy filing. Thus, claims #5-1 and #5-2 must be disallowed. Citimortgage's status as a secured creditor did not arise until such time as it was the holder of the note and the mortgage, and, therefore, its claim of 2015 (#5-3) is the only claim with any possible legitimacy, although it is clearly untimely.[1]

Count V asks that I modify the mortgage now held by Citimortgage. Citimortgage argues that the mortgage cannot be modified under 11 U.S.C. § 1322(b)(2) since the only collateral for the mortgage is Debtor's principal residence. I don't see where this is disputed.

---

[1] The claims deadline was July 20, 2011. (Doc. #10 in case #5:11-bk-01487-JJT.)

[K:\Cathy\Opinions-Orders filed 2017\5-13-ap-00206-JJT_Garnier_#131_#134.pdf]  5

Case 5:13-ap-00206-JJT    Doc 139    Filed 02/14/17    Entered 02/14/17 15:18:39    Desc
Main Document    Page 5 of 8

The Debtors advance that "Citimortgage had no basis whatsoever to collect these funds (mortgage payments) from the Plaintiff, in light of the Plaintiff/Debtor's automatic stay of both of his bankruptcies and his discharge order together with the absence of any mortgage inuring to the benefit of Citimortgage." (Doc. #135 at 2.) However, there is no prohibition against paying a servicer or a mortgagee during the pendency of the automatic stay. Consider § 361 of the Bankruptcy Code providing for the payment to a creditor of adequate protection payments. While Citimortgage was not a holder of a mortgage until 2013, they were the servicer for the mortgagee as of 2006 and may have had the right to collect payments. Furthermore, it is not a violation of the discharge order to pay a mortgagee even though the underlying note may be discharged of personal liability. 11 U.S.C. § 524(j). "[T]he Code provides that a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy." *Johnson v. Home State Bank*, 501 U.S. 78, 83, 111 S.Ct. 2150, 2153, 115 L.Ed.2d 66 (1991). "[T]here can be no doubt that the surviving mortgage interest corresponds to an 'enforceable obligation of the debtor." *Johnson v. Home State Bank*, 501 U.S. at 84, 111 S. Ct. at 2154, 115 L. Ed. 2d 66 (1991).

Debtors further argue that, until Citimortgage became the holder of the mortgage, it had no right to collect payments from the male Debtor, but a servicer likely has the right to collect funds.[2] Moreover, the holder of the note had a right to collect funds up to the date of discharge if such can be done without violating the automatic stay.

Citimortgage argues that the note executed by the Debtor in conjunction with the

---

[2] The authority of the servicer would be spelled out in the servicing agreement, which has not been introduced.

mortgage is bearer paper in its possession. While the Debtor does not appear to dispute that allegation, he does challenge the authenticity of the copies that have been produced. This challenge must be decided at hearing. *JP Morgan Chase Bank, N.A. v. Murray*, 63 A.3d 1258, 1264–66 (Pa. Super. Ct. 2013).

To summarize, while the undisputed facts appear to indicate that Citimortgage was a servicer for some period of time on and after October 1, 2006, and Citimortgage acquired the mortgage on October 28, 2013, it is not at all clear that Citimortgage, as the holder of the note and/or the owner of the mortgage, was entitled to receive all the payments that might have been transferred to it over the course of the mortgage. For that reason, summary judgment must be denied to both parties as to Count I.

As to Count IV, I can find no facts that would allow me to reclassify the Citimortgage claim as an unsecured claim. Even if it is disallowed as being filed late, that would not result in its lien being stripped. *In re Shelton*, 735 F.3d 747, 748, 749 (8th Cir. 2013); *In re Hamlett*, 322 F.3d 342, 347 (4th Cir. 2003); *In re Be Mac Transp. Co.*, 83 F.3d 1020, 1027 (8th Cir. 1996); *In re Tarnow*, 749 F.2d 464, 465, 467 (7th Cir. 1984). This is not to say that a wholly unsecured claim could not be stripped off, as recognized by at least one circuit court. *HSBC Bank USA, Nat'l Ass'n v. Blendheim (In re Blendheim)*, 803 F.3d 477, 485 (9th Cir. 2015). The Debtors are not here arguing that there are any liens that prime the alleged lien of Citimortgage and thus reduce Citimortgage's status to a *de facto* unsecured creditor. For this reason, Citimortgage's Motion for Summary Judgment will be granted as to Count IV.

Count V of the Debtors' Amended Complaint asks me to reduce the mortgage obligation to the fair market value of the collateral and also reduce the interest. While this relief sounds as

an application of § 1322(b)(2), such a request was not included in the Chapter 13 confirmed plan, and the Debtors do not argue that. In fact, it appears not to be disputed that the prohibition against modifying a residential mortgage where there is no other collateral, set forth in that subsection, would otherwise apply. The Debtors argue an alternative reason why modification should be permitted and reduced to unsecured status. (Doc. #135 at 30.) That theory, however, is not what the prayer of Count V asks. Count V asks that the secured claim be reduced to the value of the collateral, and the interest rate be reduced to fair market value. The allegations in the Amended Complaint would make sense if this "Chapter 20" included a home mortgage that had no collateral value. See, for example, Benjamin Ellison, *Eligible to File but Unable to Receive a Discharge under 11 U.S.C.A. § 1328(f)(1): After BAPCPA, May "Chapter 20" Debtors Strip Off Valueless Home Mortgages?* 2013 No. 1 Norton Bankr. L. Adviser NL 1. It seems, however, that this mortgagee stands in first position vis-à-vis the residence. It certainly appears that the Debtors are abandoning that Count, and so I will grant Citimortgage's Motion for Summary Judgment on that Count.

My Order will follow.

By the Court,

/s/ John J. Thomas

John J. Thomas, Bankruptcy Judge
(CMS)

Date: February 14, 2017